In the
United States Court of Appeals
For the Seventh Circuit

No. 98-4078

EDDIE LEE FRYER,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 3921--Milton I. Shadur, Judge.


Argued September 28, 2000--Decided March 2, 2001


   Before FLAUM, Chief Judge, BAUER, and HARLINGTON WOOD,
JR., Circuit Judges.

   HARLINGTON WOOD, JR., Circuit Judge.  On October
11, 1991, Eddie Fryer was convicted by a jury on
three counts of bank robbery and two counts for
the use of a firearm during the commission of a
violent felony. The charges were based on three
separate armed bank robberies. On direct appeal,
Fryer's sentence and conviction were affirmed by
this court in United States v. Fryer, 974 F.2d
813 (7th Cir. 1992), cert. denied, 508 U.S. 941
(1993). On June 24, 1996, Fryer filed a pro se
motion pursuant to 28 U.S.C. sec. 2255 to vacate
his conviction on the grounds of ineffective
assistance of counsel at trial. On April 25,
1997, Fryer filed an amendment to his sec. 2255
motion raising the applicability of Old Chief v.
United States, 519 U.S. 174 (1997), to his case
as a separate issue. The district court appointed
counsel for Fryer and ultimately denied Fryer's
motion. Fryer appealed the district court's
denial and filed a petition for a certificate of
appealability. The district court granted Fryer's
certificate on one issue only, whether Old Chief
should apply to the admission of Fryer's prior
felony conviction which was presented at trial.
Fryer then filed in this court a motion for
enlargement of the issues in the certificate of
appealability. We denied the motion in an order
issued on November 30, 1999. We now hold that Old
Chief does not apply and affirm the denial of

Fryer's habeas petition.

I.  Background

   A detailed presentation of the facts of Fryer's
case may be found in Fryer, 974 F.2d at 814-18.
Due to the limited nature of this inquiry, we
recount only the facts which are relevant to the
issue in this opinion. Fryer was charged with
three counts of bank robbery with the use of a
dangerous weapon in violation of 18 U.S.C.
sec.sec. 2113(a) and (d), three counts for the
use of a weapon during and in relation to the
commission of a crime of violence under 18 U.S.C.
sec. 924(c), and a seventh count for possession
of a firearm by a felon in violation of 18 U.S.C.
sec. 922(g). He was found guilty on three bank
robbery counts and two counts for the use of a
weapon during two of the bank robberies.

   In presenting the necessary elements under Count
7, possession of a firearm by a felon, the
government sought to enter into evidence a
certified judgment of conviction ("CJ") in order
to satisfy the prior felon element. The CJ
contained the name and nature of the prior
offense, which was robbery. Fryer objected,
arguing the CJ was highly prejudicial because it
was the same offense for which he was currently
being tried. Although the district court
overruled Fryer's objection, before allowing the
evidence to be introduced, the judge admonished
the jury regarding the limited purpose for which
they could use the prior conviction.

You are about to hear evidence with respect to
defendant Eddie Lee Fryer having been convicted
of an offense punishable by imprisonment for a
term exceeding one year. This evidence may be
considered by you only on the question whether
the government has established one of the
elements of the offense that's charged in Count
7 of the indictment, which you will have later
on. You will recall from opening statements that
there was a reference to one of the charges
having to do with the defendant's allegedly
having possession of a firearm at a time that he
had previously been convicted of what we referred
to as a felony offense--that is, something
punishable by imprisonment for a term exceeding
one year. So that the evidence that you are about
to hear may be considered by you only for that
limited purpose, not for any other purpose in
connection with the case.

The government attorney then read to the jury the
CJ, which stated that Fryer had been charged with
armed robbery, was convicted of armed robbery,
and was sentenced "to three years probation, the
first six months in the Cook County Department of

Corrections." Fryer immediately objected to the accuracy of the CJ, noting that armed robbery was not a probationable offense under the Illinois statute. From what the court and attorneys could deduce, Fryer had been charged with armed robbery but convicted of robbery, a lesser offense. The district court then instructed the jury to disregard the published CJ and ordered the government to obtain a corrected replacement. A second CJ was obtained, which contained the correct charge and conviction but an incorrect sentence. While preserving his objection to the admissibility of the exact nature of the conviction, Fryer agreed to stipulate to the fact that he had previously been charged with armed robbery, convicted for the lesser offense of robbery, and was sentenced.

At the end of the trial, while instructing the jury as to the felon-in-possession count, the district court repeated the earlier limiting instruction it had given, noting that,

you have heard evidence that defendant Eddie Lee Fryer has been convicted then of an offense punishable by imprisonment for a term exceeding one year. Importantly, you may consider that evidence only on the question whether the government has established an element of the offense charged in Count 7 of the indictment. That evidence is to be considered by you only for that limited purpose and for no other.

Fryer was acquitted on Count 7. However, Fryer maintains that allowing the jury to learn the nature of his prior conviction prejudiced him in the jury's consideration of the three counts of armed bank robbery.

II.  Analysis
A.  Standard of Review

We review a district court's denial of a sec. 2255 petition on factual matters for clear error, and on questions of law de novo. See Arango-Alvarez v. United States, 134 F.3d 888, 890 (7th Cir. 1998).

We note that the district court addressed the effect on Fryer's petition of the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which went into effect on April 24, 1996, after Fryer's direct appeal was finalized in 1993, but before his collateral appeal was filed in 1996./1 As pertains to the single issue before us now, AEDPA limits the time a petitioner may bring a sec. 2255 motion to one year, in Fryer's case, running from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. sec. 2255(3). Fryer timely filed an amendment to his petition after the publication of Old Chief in 1997. In Old Chief, the Supreme Court resolved a split of authority in the federal courts and ruled that evidence of prior felony convictions used to support a charge under 18 U.S.C. sec. 922(g)(1) should not be heard by the jury where the defendant offers to stipulate to the existence of such convictions. 519 U.S. at 191.

Fryer originally attacked this same issue on the merits in his direct appeal when he challenged the admissibility of evidence under Federal Rule of Evidence 403, arguing that allowing the jurors to learn the nature of his prior conviction unfairly prejudiced him, which, he claims, was evidenced by the jury's convictions on the robbery counts. A panel of this court found that "any prejudice to [Fryer] was insubstantial, if not nonexistent, in the face of the overwhelming evidence of his guilt," and noted that the district court correctly gave a cautionary instruction limiting the use of the prior conviction to consideration of the felon-in-possession count only. Fryer, 974 F.2d at 823.

Then, in his July 23, 1997 reply in support of his sec. 2255 petition, Fryer transformed his failed evidentiary argument into a "new" issue by stating that "Old Chief constitutes new law which should be retroactively applied," and noted, "Under the Teague [v. Lane, 489 U.S. 288 (1989)] analysis, the rule set forth in Old Chief qualifies under the second exception to the general rule of nonretroactivity for cases on collateral review--it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty," or "[p]ut another way, the Court's ruling in Old Chief qualifies as a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." In his April 29, 1997 amendment motion to his sec. 2255 petition, Fryer acknowledged that applying Old Chief to his habeas petition presented a retroactivity issue because his case had become final on May 24, 1993, when his petition for certiorari was denied. See Fryer v. United States, 508 U.S. 941 (1993). In his petition for certificate of appealability, Fryer added one sentence to his "exception to Teague" argument, stating that the holding in Old Chief "may not be a new rule as defined in Teague and, therefore, may be retroactively applied on collateral review." Finally, in his appellate brief he argues that, because existing precedent dictated that the name and nature of his prior conviction should not

have been disclosed, there is no new rule of law.

To address all of Fryer's arguments, we first review the holding in Old Chief to determine if it establishes a new rule of law./2 The defendant in Old Chief was charged with numerous counts, including a felon-in-possession count under 18 U.S.C. sec. 922(g)(1). 519 U.S. at 174. Old Chief filed a pre-trial motion to exclude any mention or prohibit any evidence as to the exact name and nature of his prior criminal convictions, but agreed to stipulate to the fact that he had been convicted of a crime punishable by imprisonment exceeding one year, which is a felony. Id. at 175. The government refused to join in the stipulation and the district court overruled both Old Chief's pre-trial motion and a second objection made during trial. Id. at 177. Also, as the Court noted, the jury instruction as to the felon-in-possession charge was erroneous, although it did state, "You may not consider a prior conviction as evidence of guilt of the crime for which the defendant is now on trial." Id. at 176 n.2. Old Chief was convicted of all charges brought against him. Id. at 176. The Court held that the government's introduction at trial of evidence that revealed the exact name and nature of the defendant's prior felony conviction to support a charge under 18 U.S.C. sec. 922(g)(1), where the defendant offered to stipulate to the fact of a prior felony, unfairly prejudiced the defendant under the terms of Rule 403. Id. at 191-92.

Fryer's case is clearly distinguished from that of Old Chief. As the record indicates, Fryer objected to stating the offense but did not offer to stipulate. Only after giving a detailed cautionary instruction did the court allow the CJ to be presented. After the CJ was first read, Fryer objected to the accuracy. The government then offered to stipulate as to the nature and sentencing of the conviction but both counsel and the judge agreed to wait for a second CJ with correct information. When the new CJ arrived, the sentence was incorrect. The judge suggested a stipulation as to the correct charge, conviction, and sentencing. Defense counsel agreed although he preserved his objection to a reading of the exact name and nature of the charges. The court also gave an additional limiting instruction prior to deliberation. The jury acquitted Fryer on two counts, one of which was the felon-in-possession charge. However, even though Fryer's case does not follow the criteria of Old Chief, because Fryer is seeking the benefit of what may be a new rule of law, we must apply Teague before considering the merits of the claim. See Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

More than ten years ago, the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328 (1987). A petitioner seeking application of a new rule generally must show that the new rule was announced while his case was on direct appeal or not yet final. Id. at 321 & n.6 (holding that a case is final with respect to retroactivity analysis "in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). However, a case on collateral review is generally not entitled to retroactive application of new rules. Mackey v. United States, 401 U.S. 667, 682-83 (1971).

In Old Chief, the Court stated that the "principal issue is the scope of a trial judge's discretion under Rule 403." 519 U.S. at 180. Rule 403 provides that a district court may exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." The Court noted at that time, "the accepted rule was that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away." Id. at 189. However, the Court then noted that this "accepted" rule "has . . . virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." Id. at 190. Therefore, "in any [case] in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available." Id. at 191. "[T]his will be the general rule when proof of convict status is at issue." Id. at 192. The Court seems to acknowledge a clear break from the previously "accepted" rule of prosecutorial entitlement, creating a "new rule" for proof of convict status. The dissenting justices recognized this as "a newly minted rule that a defendant charged with violating sec. 922(g)(1) can force the Government to accept his concession to the prior conviction element of the offense, thereby precluding the Government from offering evidence on this point." Id. at 192-93 (5-4 decision) (O'Connor, J. dissenting) (emphasis added).

One of Fryer's arguments asserts that, although this is a new rule of law, his case falls within an exception allowing for retroactivity. The application of a new rule of law and the limited exceptions to this rule of preclusion are set forth in Teague v. Lane. 489 U.S. at 311. In Teague, the Supreme Court held that on collateral review, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," providing for only two narrow exceptions. Id. at 310. The two exceptions are (1) rules which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," and (2) rules establishing watershed principles of criminal procedure that are "implicit in the concept of ordered liberty." Id. at 311 (citations omitted). As the Court explained in Teague, a case announces a new rule if it breaks new ground, imposes a new obligation on the states or the federal government, or if the result was not dictated by precedent existing at the time the defendant's conviction became final. Id. at 301; see also Stewart v. Lane, 60 F.3d 296, 300 (7th Cir. 1995). The Court presented a three-step analysis for applying Teague to determine if a case announced a new rule of law.

First, the court must ascertain the date on which the defendant's conviction and sentence became final for Teague purposes. Second, the court must survey the legal landscape as it then existed, and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.

Caspari, 510 U.S. at 390 (internal quotations, citations, and alterations omitted). Although it may seem obvious that the Court created a new rule in Old Chief, because there was a split in the federal courts concerning conviction status, it is necessary to examine the holdings of Seventh Circuit cases prior to Old Chief. Therefore, we must conduct the three-step analysis in Caspari.

As to the first prong, there is no dispute Fryer's conviction was final on May 24, 1993 when his petition for certiorari was denied. For the second prong, we must survey the legal landscape as it existed on May 24, 1993 and "determine whether reasonable jurists would have felt

compelled by existing precedent on that date to conclude that the rule announced in [Old Chief] was required by the Constitution." Spreitzer v. Peters, 114 F.3d 1435, 1443 (7th Cir. 1997) (citing Graham v. Collins, 506 U.S. 461, 467 (1993) ("unless reasonable jurists hearing petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor, we are barred from doing so now.")). In United States v. Allen, 798 F.2d 985, 1001 (7th Cir. 1986), the government introduced at trial a certified copy of the defendant's prior conviction of armed bank robbery, where a prior felony conviction was an element of the crime charged. Id. Allen objected and suggested that he stipulate only to the element of the charge but not inform the jury of the prior conviction. Id. Stating that the general rule was that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away," (as had been discussed in Old Chief, 519 U.S. at 189), the court in Allen held that "[i]n most, but not all, cases, a party is not required to accept a judicial admission of his adversary, but may insist on proving the fact." 798 F.2d at 1001. Although the court noted that the general rule was the same as the balancing test required by Rule 403, the panel stated that "a cold stipulation can deprive a party of the legitimate moral force of his evidence and can never fully substitute for tangible, physical evidence or the testimony of witnesses." Id. (internal quotations and citations omitted). The court held that the district court did not err in admitting the certificate of conviction. Id. at 1002.

More specifically, in United States v. Hope, 906 F.2d 254, 259 (7th Cir. 1990), one of the charges against the defendant was for a violation of sec. 922(g)(1). Hope's stipulation to a prior felony included the nature of the conviction, that of deviate sexual assault. The court noted that the evidence did not make the jury aware of any prior conviction beyond that necessary as an element of the offense, and that the government did not suggest to the jury that the prior conviction demonstrated a likelihood that he had committed the offense charged, nor did the government elaborate on the specifics of the prior conviction. Id. The court held that even though the district court had failed to give a limiting instruction, what error there was, was harmless. Id. at 260. In United States v. Madewell, 917 F.2d 301, 305 (7th Cir. 1990), also a case where one of the charges against the defendant was for a violation of sec. 922(g)(1), the defendant argued that he should have been allowed to stipulate to his prior conviction, which was for a drug-related charge. Id. Madewell

maintained that the prior conviction was so highly prejudicial that it would "lead to a conviction based on the inference that he was acting in conformity with past misconduct rather than on the basis of proof of guilt beyond a reasonable doubt." Id. The court found "unpersuasive the proposition that knowledge of the nature of Madewell's prior felony and not knowledge of the[ ] facts caused the jury to find Madewell guilty," noting that the effect of a stipulation or limiting instruction would have had an insignificant effect on the outcome of the trial. Id.

   Although the balancing test under Rule 403 has guided this and all other courts in determining whether the probative value of evidence is outweighed by the danger of unfair prejudice, precedent in this circuit prior to May 1993 would suggest that the name and nature of a prior conviction which was introduced as an element of an offense were allowed even when the defendant objected and requested a stipulation. In light of these previous cases, we conclude that reasonable jurists could have disagreed over whether evidence of the name and nature of a prior conviction should not be allowed, and the issue was therefore "susceptible to debate among reasonable minds." See Graham, 506 U.S. at 476 (internal quotation and citation omitted). The district court made a good faith interpretation of existing precedent during Fryer's trial and did not proceed in a manner contrary to or which was an unreasonable application of clearly established federal law as determined by the United States Supreme Court. See, cf., id.; Spreitzer, 114 F.3d at 1447. We find that Old Chief announced a new rule under Teague and that Fryer would not be entitled to benefit from that new rule on habeas review.

   Finally, under the third step of the analysis, we must determine whether Old Chief falls within either of the two narrow exceptions as stated in Teague. We agree with the holding of the Sixth Circuit in In re Green, 144 F.3d 384, 387 (6th Cir. 1998) (per curiam).

The decision in Old Chief announced a new rule concerning the admissibility of evidence in a criminal case. . . . This decision did not merely reaffirm the proper interpretation of existing law. (citation omitted). . . . The decision in Old Chief did not place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or otherwise prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense; nor did it announce a new "watershed" rule of criminal

procedure implicating the fundamental fairness and accuracy of the criminal proceeding. Hence, the rule is not retroactive, and is therefore inapplicable on collateral review.

Id. (citing Caspari, 510 U.S. at 396); see also Nelson v. United States, 184 F.3d 953, 955 (8th Cir. 1999) (holding that Old Chief was not an exception under Teague, and "merely announced a new rule concerning the admissibility of evidence in a criminal case."). We find that the decision in Old Chief does not fall within either of the two exceptions.

In Fryer's final argument, which appeared for the first time in his appellate brief, he maintains that the Court in Old Chief did not create a new rule of law within the meaning of Teague, but determined the meaning of a congressional enactment. Therefore, Fryer asserts that under the holding of Bousley v. United States, 523 U.S. 614 (1998), Old Chief should be applied retroactively to his case. We note that technically, the Bousley argument is waived because it was never raised at the district court level. See Huntzinger v. Hastings Mut. Ins. Co., 143 F.3d 302, 307 (7th Cir. 1998) ("there may exist narrow exceptions to the general rule barring consideration of new arguments on appeal 'where jurisdictional questions are presented or where, in exceptional cases, justice demands more flexibility.'" (quoting Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1333 (7th Cir. 1977)). Fryer's case does not "implicate[ ] jurisdictional issues nor give[ ] rise to exceptional circumstances." See id.

In any event, Fryer's argument would fail even if it had been raised before this appeal. The Supreme Court did not apply the rule of Teague in Bousley, but determined that in a sec. 2255 collateral relief case where the only constitutional claim was whether or not the petitioner's guilty plea was knowing and intelligent, Teague, which applied only to procedural rules, was inapplicable "to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." Bousley, 523 U.S. at 620. The Court noted that the Teague doctrine was based on the notion that one of the "principal functions of habeas corpus [is] to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted." Id. (internal quotations and citations omitted). The Court also observed,

[U]nless a new rule of criminal procedure is of such a nature that "without [it] the likelihood of an accurate conviction is seriously

diminished," [Teague v. Lane,] 489 U.S., at 313, there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct "'beyond the power of the criminal law-making authority to proscribe,'" id., at 311 (quoting Mackey v. United States, 401 U.S. 667, 692 (1971)), necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal." Davis v. United States, 417 U.S. 333, 346 (1974).

Id. Having already determined that the facts of Fryer's case do not fall within the exceptions as stated in Teague, we also find that Bousley is not applicable. We do not believe in Fryer's situation that "the likelihood of an accurate conviction [was] seriously diminished" without the retroactive applicability of Old Chief. The holding in Old Chief deals with a new rule of criminal procedure and is not an interpretation of the meaning of a congressional statute.

III.  Conclusion

  For the above-stated reasons, we find that Fryer has not identified a new rule of constitutional law made retroactive to cases on collateral review. Accordingly, the district court's denial of the petition for writ of habeas corpus is AFFIRMED.


/1 Fryer's original habeas petition included several issues in which he argued that his trial counsel was constitutionally deficient. The district court correctly determined that AEDPA's time limitations would not bar Fryer's motion, following Lindh v. Murphy, 96 F.3d 856, 865-66 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997).

/2 The applicability of Old Chief was briefly mentioned in a previous unpublished Seventh Circuit opinion, Fisher v. Litscher, No. 00-2199, 2000 WL 1909746 (7th Cir. Dec. 29, 2000). The panel did not analyze the Old Chief issue but stated in a footnote, "[I]t does not appear that Old Chief created a new rule of constitutional law," and confined its analysis of ineffective assistance of counsel to the standard established in Strickland v. Washington, 466 U.S. 668 (1984). Fisher, 2000 WL 1909746 at *2 n.1. Based upon the lengthy analysis stated above, the holding in Fryer contradicts the dicta in Fisher, even though this does not affect the outcome in Fisher. The panel in Fisher declined to apply Old Chief retroactively, id., reaching the same

conclusion on that point as we do in this case.